UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

EDWARD CHLYSTEK,

    Plaintiff,

v.                                                                                                                          Civil No. 11-11928
                                                                                           Honorable Thomas L. Ludington

SHAUN DONOVAN, Secretary,
U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT,

    Defendant.

_____/

**OPINION AND ORDER OVERRULING DEFENDANT'S
OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION,
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff worked for Defendant for sixteen years. For sixteen years, he received glowing performance reviews. In the sixteenth year, he didn't get a promotion. The younger man, the seemingly less qualified man, did.

One way to show that a defendant's proffered explanation for an adverse employment action is mere fiction is, sensibly enough, by demonstrating that it has no basis in fact. *Bhama v. Mercy Mem'l Hosp. Corp.*, 416 F. App'x 542, 550 (6th Cir. 2011). Here, a reasonable jury could make this deduction. Defendant is not entitled to summary judgment.

**I**

This age discrimination case, as noted, arises out of a plaintiff's assertion that a younger, less-qualified applicant received a promotion rather than an older, more-qualified applicant.

**A**

The older applicant, Plaintiff Edward Chlystek began working for Defendant United States Department Housing and Urban Development as a housing representative in 1990.

In 1993, Defendant promoted Plaintiff to project manager. In 2006, Plaintiff was still working as a project manager when Defendant posted an opening for a senior project manager.

**1**

Plaintiff, 51 years old at the time, applied for the job. He had a bachelor's degree in economics and business management. He had an MBA. And he had a certificate in housing and community development from the University of Maryland's School of Public Affairs' executive training program.

He also had 13 years of experience as a project manager for Defendant. And he had performance awards — lots of them. Specifically, Defendant had given Plaintiff performance awards in 1993, 1995, 1996, 1998, 1999, 2000, 2001, 2003, 2004, and 2005. (As detailed below, he also received glowing annual performance reviews.)

In short, his education and performance reviews were exemplary.

**2**

The interview committee was comprised of Ms. Patricia Russie, Mr. Silas Polk, and Ms. Laurie Coplin.

Mr. Polk was Plaintiff's former supervisor. Ms. Coplin, his current supervisor. And Ms. Russie was Plaintiff's supervisors' supervisor (that is, she was Mr. Polk's and Ms. Coplin's supervisor).

**3**

Plaintiff, as noted, did not get the promotion. Mark Dominick did. He was in his mid-20's, had a bachelor's degree, and had worked for Defendant for two years.

Plaintiff asked Ms. Russie why he did not get the job, when he had better credentials and more experience. She responded that Plaintiff was too "compassionate" in his work and that Mr. Dominick was more "aggressive."

This litigation ensued.

**B**

Plaintiff began by filing an equal employment opportunity (EEO) complaint with Defendant alleging age discrimination.

**1**

One of Defendant's representatives, Ophelia Richardson, then emailed Ms. Russie, asking her to explain why she had selected Mr. Dominick rather than Plaintiff (there is no evidence that Ms. Richardson contacted either Mr. Polk or Ms. Coplin).

Ms. Russie responded: "Mark Dominick was selected for the position based on the basis [sic] of relative ability, knowledge and skills."

Ms. Richardson wrote back: "Thanks Patty. It would be good, however, if you can be more specific. Can you articulate what made the individual you recommended for selection better suited to the position?"

Ms. Russie replied: "Mr. Dominick demonstrates exceptional initiative and problem solving skills. He has displayed initiative by requesting work assignments and developing solutions which significantly improve the final product." After giving two examples of Mr. Dominick's initiative, she continued: "He is proactive and his supervisor does not have to follow

up with him to assure that work has been completed timely . . . . He has a positive demeanor and coordinates effectively with staff and stakeholders to arrive at proactive decisions and compromises."

Ms. Russie did not, however, mention any deficiencies in Plaintiff's work. Indeed, she did not mention him at all.

**2**

About four months passed. Defendant then asked Ms. Russie to complete an "EEO investigative affidavit." She did so in mid-2007. Asked why she had not recommended Plaintiff for the job, she answered: "He has a history of being argumentative. He does not follow supervisor's directives. I was requested by an owner to have him removed as Project Manager from a property (Kearsley Manor) because he was inflexible and demanding."

**a**

The dispute over Kearsley Manor occurred in 2004. As noted, Plaintiff received a performance award that year. He also received a glowing performance review that rated him "highly successful" in four categories, "outstanding" in the fifth.

In the "customer service" category, for example, the review rated Plaintiff "highly successful." It elaborated: "Edward consistently performs in a manner that results in a favorable public impression of HUD and HUD policies. He demonstrates a positive demeanor towards his job functions, assists and encourages co-workers. He anticipates problems and/or issues and takes initiative. He works very effectively with owners, management agents, and tenants alike to enforce HUD guidelines and when needed to work at workable compromises."

In the "departmental strategic goal" category, the review rated Plaintiff "outstanding," elaborating: "Edward has consistently assisted the Detroit Multifamily Hub in attaining all of its

national and local goals. His work product is consistently completed ahead of schedule and usually only requires minimal changes, if any, by senior staff."

In the "technical advice, training, and guidance" category, the review rated Plaintiff "highly successful." It explained: "Edward always provides accurate, thorough, and timely advice to all HUD's partners, whether they are owners, agents or tenants."

And so it went for each of the five categories — all positives, no negatives.

The "rating official" who completed Plaintiff's 2004 review was Mr. Polk. The "reviewing official" who signed off on it, Ms. Russie.[1]

**b**

Like Ms. Russie, Mr. Polk completed an "EEO investigative affidavit" in mid-2007. Asked why he had not recommended Plaintiff for the promotion, Mr. Polk answered that "when it came to taking direction he was/is unwilling to give in. Also, when it comes to oversight of properties, he tends to be a micro-manager."

**3**

**a**

Plaintiff's performance review from the year that he applied for the promotion in question, 2006, was again glowing. It rated him "highly successful" in five categories, "fully successful" in one, and "outstanding" in the seventh.

In the "customer service" category, Plaintiff's 2006 review again rated him "highly successful," elaborating: "Mr. Chlystek consistently provides good service to the owners and agents of properties in [his] portfolio." It went on to give examples of his "effective

---

[1] Ms. Russie also sent the owner of Kearsley Manor a letter in 2004 addressing the concerns that Plaintiff had raised regarding that property. "We have reviewed your response," Ms. Russie wrote, "and have determined to sustain the Below Average rating. . . . It is apparent that in a number of areas your company lacked a procedure or system to address management issues or to follow procedures that were already established."

communicat[ion] with owners and agents." And it noted: "When residents call with complaints he quickly investigates them and resolves them."

In the "technical advice, training, and guidance" category, the review once again rated Plaintiff "highly successful." His work was "well researched, clearly presented, and well received by his peers."

In the "workload management" category, the review rated Plaintiff "highly successful." It elaborated: "Mr. Chlystek completed his work well under established timeframes. His work products were accurate and complete. He independently adjusted his work as needed in order to meet unanticipated work demands."

And in the "departmental strategic goal" category, the review again rated Plaintiff "outstanding." Emphasizing that Plaintiff' "embrace[d] high standards of ethics, management and accountability," it concluded: "All Departmental goals were met."

The rating official who completed the review was Ms. Coplin. The reviewing official who signed off on it was, again, Ms. Russie.

**b**

Ms. Coplin, like Ms. Russie and Mr. Polk, also completed an EEO investigative affidavit in mid-2007. Explaining why she had not recommended Plaintiff for the job, Ms. Coplin succinctly wrote: "He doesn't always demonstrate the flexibility needed for the position, nor are his solutions or advice always appropriate to the issue under discussion. His level of initiative varies."

**4**

The EEO denied Plaintiff's claim. It found that although he had established a prima facie case of age discrimination, he had not established that Defendant's proffered reason for hiring Mr. Dominick was mere pretext for intentional discrimination.

**5**

Having exhausted his administrative remedies, Plaintiff brought suit in this Court. The case was referred to Magistrate Judge Charles Binder for general case management.

Defendant then moved for summary judgment. Judge Binder issued a report recommending that the motion be denied. Defendant has filed objections to the report.

**II**

Any party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendations. 28 U.S.C. § 636(b)(1). The district court will make a "de novo determination of those portions of the report . . . to which objection is made." *Id*. The Court is not obligated to review the portions of the report to which no objection was made. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985).

**III**

Defendant enumerates two objections to Judge Binder's report and recommendation.[2] Each is addressed in turn.

**A**

Defendant first objects that the report does not reach the "ultimate question," whether Plaintiff was the victim of intentional discrimination. Def.'s Objection 2. Defendant writes:

---

[2] A little more than two months after the report and recommendation was issued, Defendant filed a "supplemental" objection "[b]ased upon the hearing transcript." That "supplemental" objection was not filed within 14 days of service of the report and recommendation. And it objects to Judge Binder's statements at the hearing, not the report and recommendation itself. Untimely and not relevant under § 636, the merits of this "supplemental" objection is not addressed in this opinion.

> Because this suit was filed under the ADEA, the Plaintiff must prove, by a preponderance of the evidence, that his "age was the 'but-for' cause" of the Defendant's decision not to promote him to the senior project manager position. The magistrate judge did not make any references to the Plaintiff's burden of persuasion and specifically failed to discuss the "but-for" legal standard in his report and recommendation. He did not address the lack of discriminatory animus or make proposed findings on the ultimate question of law.

*Id.* at 2–3. Defendant's objection lacks merit.

The Age Discrimination in Employment Act of 1967 (ADEA) makes it unlawful for an employer to take adverse action against an employee "because of such individual's age." 29 U.S.C. § 623(a). In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Supreme Court established that this provision requires a plaintiff prove that age was the 'but-for' cause of the challenged employer decision." *Id.* at 178.

At page four of the report, Judge Binder specifically cites *Gross*, noting that the "*McDonnell Douglas* framework [is] still applicable to age discrimination claims even after *Gross*." In the Sixth Circuit, he is correct. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009); *see also Aldridge v. City of Memphis*, 404 F. App'x 29, 40 n.12 (6th Cir. 2010) ("Because this circuit has long found the *McDonnell Douglas* framework useful in analyzing circumstantial evidence of ADEA claims, and because *Gross* did not clearly proscribe this practice, we apply it." (quotation marks omitted)), *cited in* Report & Recommendation 4.

Judge Binder also addresses the ultimate question — whether Defendant's proffered reasons were pretextual and the real reason was discriminatory animus — indeed, Judge Binder does so at length. For example, he writes:

> I suggest that Plaintiff has provided sufficient evidence to create a genuine issue of material fact as to whether Defendant's proffered reasons were pretextual. Although a plaintiff's subjective views of his qualifications in relation to other employees, without more, fails to establish discrimination, I suggest that Plaintiff has here proffered objective reasons why he is significantly more qualified than Mr. Dominick . . . .

> I further suggest that Plaintiff has proffered evidence which could be interpreted by a reasonable jury as showing that Defendant's proffered reasons were an after-the-fact justification, i.e., that they had no basis in fact, did not actually motivate Defendant's challenged conduct, and were insufficient to warrant the failure to promote. Plaintiff's only criticized conduct occurred in 2004 during the Kearsley Manor project; yet, in that year and the years following, Plaintiff received outstanding job performance reviews. Plaintiff's attention to detail was apparently appreciated before the decision to promote was made or at least was not cause of dissatisfaction with Plaintiff's performance before that time.
>
> Accordingly, I suggest that this evidence, in addition to all the evidence proffered by Plaintiff above, is sufficient to create a genuine issue of material fact as to pretext.

Report & Recommendation 8–9 (citation, quotation marks, and brackets omitted) (quoting *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 269 (6th Cir. 2010).

Defendant's first objection — that the report doesn't reach the "ultimate question" in this case — lacks merit. The report not only reaches the question, it focuses intently on it.

**B**

**1**

Defendant's second objection asserts: "The magistrate judge has not identified a genuine issue regarding any material facts or proven that he is entitled to judgment as a matter of law." Def.'s Objection 3.

As a threshold matter, it should be noted that Judge Binder was not required to prove "that he is entitled to judgment as a matter of law." Nor, for that matter, was Plaintiff. Rather, as Defendant moved for summary judgment, it was Defendant's burden to prove that it was entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. And this it did not do.

**2**

Continuing with its second objection, Defendant writes: "More important, the magistrate judge only attributes the 'after-the-fact justification' to one person, Patricia Russie. His

proposed findings do not address the proffered reasons of Silas Polk or Laurie Coplin. . . . Because the magistrate judge did not address the reasons articulated by Polk and Coplin, his pretext analysis is flawed." Def.'s Objection 4.

Defendant's objection lacks merit. One way to prove that a defendant's proffered explanation of why it took an adverse employment action is a mere fiction is to show that it has no basis in fact. *Bhama v. Mercy Mem'l Hosp. Corp.*, 416 F. App'x 542, 550 (6th Cir. 2011).

Here, viewing the facts in the light most favorable to Plaintiff, a reasonable factfinder could conclude that the reasons proffered by Mr. Polk and Ms. Coplin were an after-the-fact justification that did not actually motivate their decision.

**a**

After Plaintiff filed an EEO complaint, as noted, Mr. Polk asserted that the reason he had not recommended Plaintiff for the promotion was that "he was/is unwilling to give in. Also, when it comes to oversight of properties, he tends to be a micro-manager."

None of these problems, however, were reflected in the performance reviews that Plaintiff received before filing the complaint — including the review that Mr. Polk himself completed. In that review, for example, Mr. Polk rated Plaintiff "highly successful" in four categories, "outstanding" in one. (Plaintiff did not receive any ratings of "fully successful" or "marginally successful," much less "unacceptable.")

Nowhere in that review did Mr. Polk suggest that Plaintiff was "unwilling to give in." Rather, he expressly praised Plaintiff for working "very effectively with owners, management agents, and tenants alike . . . to work at workable compromises."

Nowhere did Mr. Polk suggest that Plaintiff was "a micro-manager." On the contrary, read as whole, the report unequivocally represents that Plaintiff was a "highly successful"

manager. Elaborating on Plaintiff's performance, Mr. Polk wrote: "Edward consistently performs in a manner that results in a favorable public impression of HUD and HUD policies. He demonstrates a positive demeanor towards his job functions, assists and encourages co-workers. He anticipates problems and/or issues and takes initiative. He works very effectively with owners, management agents, and tenants alike to enforce HUD guidelines and when needed to work at workable compromises." Mr. Polk continued: "Edward always provides accurate, thorough, and timely advice to all HUD's partners, whether they are owners, agents or tenants."

**b**

Ms. Coplin also offered an explanation that could reasonably be construed as an after-the-fact justification. Ms. Coplin asserted that her reasons for not recommending Plaintiff for the promotion were that "[h]e doesn't always demonstrate the flexibility needed for the position, nor are his solutions or advice always appropriate to the issue under discussion. His level of initiative varies."

None of these problems, however, were reflected in Plaintiff's performance review that Ms. Coplin completed that very year.

Discussing Plaintiff's "flexibility" and "initiative" in that review, for example, Ms. Conley wrote: "Mr. Chlystek completed his work well under established timeframes. His work products were accurate and complete. He independently adjusted his work as needed in order to meet unanticipated work demands."

Likewise, addressing his "solutions" and "advice," Ms. Coplin rated Plaintiff as "highly successful." She elaborated that his work was "well researched, clearly presented, and well received by his peers."

In sum, as with the explanation offered by Ms. Russie, a reasonable factfinder could conclude that the explanations offered by Mr. Polk and Ms. Coplin were after-the fact justifications.

### c

Finally, still persisting with its second objection, Defendant writes: "Most notably, there is no evidence of age-based remarks or discriminatory animus on the part of Defendant or any of his agents, i.e., Patricia Russie, Silas Polk, Laurie Coplin, Kenneth Pinckney, Charles Williams and Craig Clemmensen. In the absence of such evidence, plaintiff fails as a matter of law to satisfy his burden of persuasion." Def.'s Objection 6.

Defendant is correct that there is no direct evidence of discriminatory animus. Defendant is not correct, however, that there is no circumstantial evidence.

The Sixth Circuit instructs: "One way in which a plaintiff may demonstrate pretext is by showing that the reason given by the employer is ultimately found to be mistaken, foolish, trivial, or baseless." *Brooks v. Davey Tree Expert Co.*, 478 F. App'x 934, 942 (6th Cir. 2012) (quotation marks omitted) (quoting *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 714 (6th Cir. 2007)).

"Shifting justifications" is another way to prove pretext, with the Sixth Circuit explaining: "An employer's changing rationale for making an adverse employment decision can be evidence of pretext." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) (quoting *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1167 (6th Cir. 1996)).

Here, as noted, when Plaintiff first asked Ms. Russie why she did not offer him the promotion, she said nothing negative to him. When Ms. Richardson later asked Ms. Russie why she did not offer Plaintiff the position, she again said nothing negative about him. It was only months later that she cited problems with his performance.

As also noted, Plaintiff offers evidence that, when construed in the light most favorable to him, Mr. Polk and Ms. Coplin seemed to have changed their opinion of Plaintiff's performance after he filed suit. This could establish that the proffered reason for his not receiving the promotion has no basis in fact.

A famous fictional detective, Judges Easterbrook and Boggs observe, was known for remarking that "when you have eliminated the impossible, whatever remains, however improbable, must be the truth." *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 902 (7th Cir. 1994) (Easterbrook, J.) (quoting Arthur Conan Doyle, *The Sign of Four*, in *The Complete Sherlock Holmes* 111 (1905); *see also Hanner v. O'Farrell*, 142 F.3d 434, n.4 (6th Cir. 1998) (unpublished table op.) (Boggs, J., dissenting) (quoting same passage).

Federal discrimination law, as noted, is in accord. One way to show that a defendant's proffered explanation for an adverse employment action is mere fiction is, sensibly enough, by demonstrating that it has no basis in fact.

Here, a reasonable jury could make this deduction. Defendant has not established that it is entitled to summary judgment.

## IV

Accordingly, it is **ORDERED** that Judge Binder's report and recommendation (ECF No. 19) is **ADOPTED**.

It is further **ORDERED** that Defendant's objections (ECF No. 20) are **OVERRULED**.

It is further **ORDERED** that Defendant's motion for summary judgment (ECF No. 16) is **DENIED**.

Dated: April 16, 2013

                                         s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 16, 2013.

>s/Tracy A. Jacobs
>TRACY A. JACOBS